## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | **Jointly Administered** |
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, and | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| Debtors. | Chapter 11 |

| | |
|---|---|
| EPIC Companies Midwest 2023, LLC, | |
| EOLA Capital, LLC, | |
| Plaintiffs, | |
| v. | Adversary No. _____ |
| EPIC Management, LLC, | |
| Defendant. | |

## COMPLAINT

Plaintiffs, EPIC Companies Midwest 2023, LLC and EOLA Capital, LLC (collectively, the "<u>Plaintiffs</u>"), for their Complaint against Defendant, EPIC Management, LLC (the "<u>Defendant</u>"), state and allege as follows:

## PARTIES

1. EPIC Companies Midwest 2023, LLC ("<u>EPIC Midwest 2023</u>") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on

or around August 15, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.[1]

2.        EOLA Capital, LLC ("EOLA") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around February 8, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

3.        The Defendant is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around June 18, 2015. Its principal place of business is located at 400 10th Street SE, Minot, North Dakota, 58701.

4.        The Defendant owes funds to the Plaintiffs pursuant to certain loan transactions.

### JURISDICTION AND VENUE

5.        The Plaintiffs filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 8, 2024 (the "Petition Date"). The bankruptcy cases are currently pending before this Court.

6.        This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

7.        Venue is proper under 28 U.S.C. §§ 1408 and 1409.

8.        The Plaintiffs consent to the entry of final orders and judgment by this Court pursuant to Fed. R. Bankr. P. 7008.

9.        This Complaint is filed under Fed. R. Bankr. P. 7001.

---

[1] As of October 10, 2024, all the Plaintiffs' principal addresses changed to 900 Long Lake Road, Suite 180, c/o Lighthouse Management Group, Inc., New Brighton, Minnesota 55112-6455.

10.     The Plaintiffs are properly joined in this adversary proceeding under Fed. R. Civ. P. 20(a)(1), as incorporated by Fed. R. Bankr. P. 7020, as their claims arise out of the same transaction, occurrence, or series of transactions or occurrences and the claims involve common questions of law or fact.

## FACTUAL BACKGROUND

### I.     PLAINTIFFS' GENERAL STRUCTURE AND PURPOSE.

11.     The Plaintiffs are part of a series of affiliated companies known collectively as "EPIC Companies."

12.     EPIC Companies generally consist of the Plaintiffs, certain real estate holding entities, certain service-providing companies (i.e., property management and construction), and other companies involved in hospitality, restaurant, entertainment, and similar industries. All of them are affiliated with certain individuals who structured, organized, and sponsored this business activity, including Todd Berning.

13.     Each of the Plaintiffs were formed for the alleged purpose of providing funds to various real estate development projects throughout the State of North Dakota, each of which was developed and managed by subsidiaries of EPIC Companies (the "Project Companies").

14.     On information and belief, each of the Project Companies is a "single purpose entity," meaning that each holds one real estate development project.

15.     Based on records reviewed to date, each of the Project Companies appears to have a different ownership group.

16.     Many of the Project Companies have borrowed money from banks for the construction of the real estate projects at issue, and those banks generally have senior secured positions on the real estate owned by each of the Project Companies.

17.     The Plaintiffs typically provided funds in the form of "subordinated debt" to each of the Project Companies (the "Sub Debt"). The Sub Debt would be junior to any bank debt but superior to the equity holders in each of the Project Companies.

18.     With funds received by the Plaintiffs from certain individual investors, the Plaintiffs made loans to the Project Companies.

19.     Most loans by the Plaintiffs to the Project Companies are documented by promissory notes but, on information and belief, some may be reflected solely in accounting records.

20.     The majority of the Sub Debt required the Project Companies to make monthly installment payments to the Plaintiffs and a final balloon payment on the applicable maturity date.

21.     On information and belief, the Defendant provided construction management services for the Project Companies during the construction of their projects and provided property management services for such Project Companies once the construction was complete and the properties were operating.

## II.     TRANSFERS TO THE DEFENDANT FROM EPIC MIDWEST 2023.

22.     On August 1, 2023, Debtor EPIC Midwest 2023 and the Defendant entered into a promissory note with the following balance as of November 30, 2024:

| Lender | Date | Original Principal | Principal Paid | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
|---|---|---|---|---|---|---|---|
| EPIC Midwest 2023 | 8/1/23 | $500,000 | $0.00 | $29,999.97 | $23,333.31 | $20,933.33 | $544,266.64 |
| | | | | | | | **$544,266.64** |

(the "EPIC Midwest 2023 Note").

23.     The EPIC Midwest 2023 Note matures on August 1, 2026. Interest accrues at a rate of 8.0% and the standard late fee is $0.04 per $1.00.

24.     Pursuant to the EPIC Midwest 2023 Note, EPIC Midwest 2023 offered to loan $500,000 to the Defendant under certain terms and conditions and the Defendant accepted that offer. The EPIC Midwest 2023 Note is unsecured.

25.     On August 11, 2023, and pursuant to the EPIC Midwest 2023 Note, EPIC Midwest 2023 transferred a total of $500,000 to the Defendant (the "EPIC Midwest 2023 Transfer").

26.     Under the terms of the EPIC Midwest 2023 Note, the Defendant was required to make monthly payments to EPIC Midwest 2023 in the form of interest.

27.     The failure to make payments to EPIC Midwest 2023 as and when such payments were due constitutes a default under the terms of the EPIC Midwest 2023 Note.

28.     Between August 31, 2023 and April 30, 2024, the Defendant paid EPIC Midwest 2023 a total of $29,999.97 in interest.

29.     After April 30, 2024, the Defendant ceased making payments to EPIC Midwest 2023 and defaulted under the EPIC Midwest 2023 Note.

30.     Therefore, all amounts owed to EPIC Midwest 2023 by the Defendant became immediately due and payable.

31.     As of November 30, 2024, the Defendant owes EPIC Midwest 2023 a total of at least $544,266.64, which consists of $500,000 of principal, $23,333.31 of interest, and $20,933.33 of late fees, with interest and fees continuing to accrue.

32.     Before, during, and after the period of August 1, 2023 to August 11, 2023, EPIC Midwest 2023 had creditors, including various individual investors.

33.     On June 11, 2024, EPIC Midwest 2023's board of directors appointed Lighthouse Management Group, Inc. ("Lighthouse") as its Chief Restructuring Officer.

5

34.     Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between August 1, 2023 and August 11, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Note and the EPIC Midwest 2023 Transfer to the Defendant, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

35.     Based on the financial records identified above and reviewed by Lighthouse, between August 1, 2023 and August 11, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Note and the EPIC Midwest 2023 Transfer to the Defendant, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

## III.     TRANSFERS TO THE DEFENDANT FROM EOLA.

36.     On January 1, 2024, Debtor EOLA and the Defendant entered into a promissory note with the following balance as of November 30, 2024:

| Lender | Date | Original Principal | Principal Paid | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
|--------|------|--------------------|----------------|---------------|-------------------|-----------|------------------|
| EOLA | 1/1/24 | $450,000 | $0.00 | $12,750 | $22,312.50 | $18,892.50 | $491,205 |
| | | | | | | | **$491,205** |

(the "EOLA Note," and together with the EPIC Midwest 2023 Note, the "Notes").

37.     The EOLA Note matures on January 1, 2027. Interest accrues at a rate of 8.5% and the standard late fee is $0.04 per $1.00.

38.     Pursuant to the EOLA Note, EOLA offered to loan $450,000 to the Defendant under certain terms and conditions and the Defendant accepted that offer. The EOLA Note is unsecured.

39.     On December 18, 2023, and pursuant to the EOLA Note, EOLA transferred a total of $450,000 to the Defendant (the "EOLA Transfer").

40.     Under the terms of the EOLA Note, the Defendant was required to make monthly payments to EOLA in the form of interest.

41.     The failure to make payments to EOLA as and when such payments were due constitutes a default under the terms of the EOLA Note.

42.     Between January 31, 2024 and April 30, 2024, the Defendant paid EOLA a total of $12,750 in interest.

43.     After April 30, 2024, the Defendant ceased making payments to EOLA and defaulted under the EOLA Note.

44.     Therefore, all amounts owed to EOLA by the Defendant became immediately due and payable.

45.     As of November 30, 2024, the Defendant owes EOLA a total of at least $491,205, which consists of $450,000 of principal, $22,312.50 of interest, and $18,892.50 of late fees, with interest and fees continuing to accrue.

46.     Before, during, and after the period of December 18, 2023 to January 1, 2024, EOLA had creditors, including various individual investors.

47.     On June 11, 2024, EOLA's board of directors appointed Lighthouse as its Chief Restructuring Officer.

48.     Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 18, 2023 and January 1, 2024, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to the Defendant, EOLA was engaged or was about to engage in a

business or a transaction for which the remaining assets of EOLA were unreasonably small in relation to the business or transaction or EOLA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

49.     Based on the financial records identified above and reviewed by Lighthouse, between December 18, 2023 and January 1, 2024, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to the Defendant, EOLA was insolvent or became insolvent thereafter.

**IV.    PRIOR DEMAND FOR AMOUNTS OWED.**

50.     On August 1, 2024, the Plaintiffs caused a demand letter to be sent on their behalf to the Defendant demanding the amounts owed to the Plaintiffs under the Notes.

51.     As of the date of this Complaint, the Defendant has failed to pay the Plaintiffs.

52.     The Plaintiffs continue to be harmed by the Defendant's failure to pay the outstanding amounts owed by the Defendant to the Plaintiffs.

53.     The Plaintiffs are still in the process of tracing all of the transfers to the various Project Companies. To the extent the Defendant further transferred funds to the Project Companies, the Plaintiffs expressly reserve the right to pursue additional claims against the Defendant and any subsequent transferees, including, but not limited to, claims under Chapter 5 of the Bankruptcy Code.

**COUNT I**
**BREACH OF CONTRACT**
**(EPIC Midwest 2023 v. Defendant)**

54.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

55.    On August 1, 2023, EPIC Midwest 2023 and the Defendant entered into the EPIC Midwest 2023 Note.

56.    Under the terms of the EPIC Midwest 2023 Note, EPIC Midwest 2023 agreed to provide the Defendant a total of $500,000; in exchange, the Defendant agreed to make regular monthly payments to EPIC Midwest 2023.

57.    On August 11, 2023, and pursuant to the EPIC Midwest 2023 Note, EPIC Midwest 2023 transferred a total of $500,000 to the Defendant

58.    On or around April 30, 2024, the Defendant ceased making payments to EPIC Midwest 2023 as required by the EPIC Midwest 2023 Note.

59.    The Defendant's failure to make monthly payments to EPIC Midwest 2023 constitutes a breach of the EPIC Midwest 2023 Note.

60.    Due to the Defendant's breach of the EPIC Midwest 2023 Note, EPIC Midwest 2023 has been damaged in the amount of at least $544,266.64, plus interest and other fees and costs allowed by law and the EPIC Midwest 2023 Note.

## COUNT II
## BREACH OF CONTRACT
### (EOLA v. Defendant)

61.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

62.    On January 1, 2024, EOLA and the Defendant entered into the EOLA Note.

63.    Under the terms of the EOLA Note, EOLA agreed to provide the Defendant a total of $450,000; in exchange, the Defendant agreed to make regular monthly payments to EOLA.

64.    On December 18, 2023, and pursuant to the EOLA Note, EOLA transferred a total of $450,000 to the Defendant.

65.     On or around April 30, 2024, the Defendant ceased making payments to EOLA as required by the EOLA Note.

66.     The Defendant's failure to make monthly payments to EOLA constitutes a breach of the EOLA Note.

67.     Due to the Defendant's breach of the EOLA Note, EOLA has been damaged in the amount of at least $491,205, plus interest and other fees and costs allowed by law and the EOLA Note.

**COUNT III**
**UNJUST ENRICHMENT**
**(EPIC Midwest 2023 v. Defendant)**

68.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

69.     EPIC Midwest 2023 conferred a benefit to the Defendant by providing $500,000 to the Defendant.

70.     The Defendant knowingly accepted the $500,000 from EPIC Midwest 2023.

71.     As the Defendant did not make the agreed upon monthly payments to EPIC Midwest 2023, the Defendant is not entitled to the benefit of the value of the $500,000 from EPIC Midwest 2023.

72.     Under the circumstances, it would be unjust and inequitable to permit the Defendant to retain the benefit from its actions.

73.     The amount of benefit wrongfully retained by the Defendant is in the amount of at least $500,000, plus interest and other fees and costs allowed by law.

## COUNT IV
## UNJUST ENRICHMENT
### (EOLA v. Defendant)

74.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

75.     EOLA conferred a benefit to the Defendant by providing $450,000 to the Defendant.

76.     The Defendant knowingly accepted the $450,000 from EOLA.

77.     As the Defendant did not make the agreed upon monthly payments to EOLA, the Defendant is not entitled to the benefit of the value of the $450,000 from EOLA.

78.     Under the circumstances, it would be unjust and inequitable to permit the Defendant to retain the benefit from its actions.

79.     The amount of benefit wrongfully retained by the Defendant is in the amount of at least $450,000, plus interest and other fees and costs allowed by law.

## COUNT V
## ACCOUNT STATED
### (EPIC Midwest 2023 v. Defendant)

80.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

81.     EPIC Midwest 2023 demanded payment of the Defendant's account with EPIC Midwest 2023.

82.     The Defendant did not substantively respond to the demand letter or dispute any amounts.

83.     The Defendant did not pay the amounts due and owing to EPIC Midwest 2023.

84. As a result, EPIC Midwest 2023 has been damaged in the amount of at least $544,266.64, plus interest and other fees and costs allowed by law.

### COUNT VI
### ACCOUNT STATED
### (EOLA v. Defendant)

85. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

86. EOLA demanded payment of the Defendant's account with EOLA.

87. The Defendant did not substantively respond to the demand letter or dispute any amounts.

88. The Defendant did not pay the amounts due and owing to EOLA.

89. As a result, EOLA has been damaged in the amount of at least $491,205, plus interest and other fees and costs allowed by law.

### COUNT VII
### PROMISSORY ESTOPPEL
### (EPIC Midwest 2023 v. Defendant)

90. The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

91. The Defendant promised it would make regular monthly payments to EPIC Midwest 2023.

92. In reasonable reliance on those promises, EPIC Midwest 2023 loaned a total of $500,000 to the Defendant.

93. EPIC Midwest 2023 was harmed by its reasonable reliance on the Defendant's promises, as EPIC Midwest 2023 loaned $500,000 to the Defendant and was not repaid.

12

94.    As a result, EPIC Midwest 2023 has been damaged in the amount of at least $544,266.64, plus interest and other fees and costs allowed by law.

## COUNT VIII
## PROMISSORY ESTOPPEL
### (EOLA v. Defendant)

95.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

96.    The Defendant promised it would make regular monthly payments to EOLA.

97.    In reasonable reliance on those promises, EOLA loaned a total of $450,000 to the Defendant.

98.    EOLA was harmed by its reasonable reliance on the Defendant's promises, as EOLA loaned $450,000 to the Defendant and was not repaid.

99.    As a result, EOLA been damaged in the amount of at least $491,205, plus interest and other fees and costs allowed by law.

## COUNT IX
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
## 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (EPIC Midwest 2023 v. Defendant)

100.   The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

101.   EPIC Midwest 2023 entered into the EPIC Midwest 2023 Note with the Defendant and made the EPIC Midwest 2023 Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest 2023 with a security interest in any collateral and only paid $29,999.97 to EPIC Midwest 2023 despite receiving $500,000 from EPIC Midwest 2023.

102.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between August 1, 2023 and August 11, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Note and the EPIC Midwest 2023 Transfer to the Defendant, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small.

103.    On information and belief, between August 1, 2023 and August 11, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Note and the EPIC Midwest 2023 Transfer to the Defendant, EPIC Midwest 2023 intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

104.    Based on the financial records identified above and reviewed by Lighthouse, between August 1, 2023 and August 11, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Note and the EPIC Midwest 2023 Transfer to the Defendant, EPIC Midwest 2023 was insolvent or became insolvent as a result of the EPIC Midwest 2023 Note and the EPIC Midwest 2023 Transfer.

105.    The Defendant was the initial transferee of the EPIC Midwest 2023 Note and the EPIC Midwest 2023 Transfer.

106.    Based on the foregoing, the EPIC Midwest 2023 Note and the EPIC Midwest 2023 Transfer, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

107.    Pursuant to 11 U.S.C. § 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT X
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EPIC Midwest 2023 v. Defendant)**

108.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

109.     EPIC Midwest 2023 entered into the EPIC Midwest 2023 Note with the Defendant and made the EPIC Midwest 2023 Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $29,999.97 to EPIC Midwest 2023 despite receiving $500,000 from EPIC Midwest 2023.

110.     Before, during, and after the period of August 1, 2023 to August 11, 2023, EPIC Midwest 2023 had creditors, including various individual investors.

111.     Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between August 1, 2023 and August 11, 2023, and at all relevant times between entry into the EPIC Midwest 2023 Note and the EPIC Midwest 2023 Transfer to the Defendant, EPIC Midwest 2023 was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest 2023 were unreasonably small in relation to the business or transaction or EPIC Midwest 2023 intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

112.     The Defendant was the first transferee of the EPIC Midwest 2023 Note and the EPIC Midwest 2023 Transfer.

113.    Based on the foregoing, the EPIC Midwest 2023 Note and the EPIC Midwest 2023 Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

114.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)**
**(EPIC Midwest 2023 v. Defendant)**

115.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

116.    EPIC Midwest 2023 entered into the EPIC Midwest 2023 Note with the Defendant and made the EPIC Midwest 2023 Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest 2023 with a security interest in any collateral and eventually only paid $29,999.97 to EPIC Midwest 2023 despite receiving $500,000 from EPIC Midwest 2023.

117.    Before and during the period of August 1, 2023 to August 11, 2023, EPIC Midwest 2023 had creditors, including various individual investors.

118.    Lighthouse has reviewed EPIC Midwest 2023's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between August 1, 2023 and August 11, 2023, and at all relevant times between entry into the

EPIC Midwest 2023 Note and the EPIC Midwest 2023 Transfer to the Defendant, EPIC Midwest 2023 was insolvent or became insolvent thereafter.

119.    The Defendant was the first transferee of the EPIC Midwest 2023 Note and the EPIC Midwest 2023 Transfer.

120.    Based on the foregoing, the EPIC Midwest 2023 Note and the EPIC Midwest 2023 Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

121.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest 2023 may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**11 U.S.C. §§ 548(a)(1)(B), 550(a)**
**(EOLA v. Defendant)**

122.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

123.    EOLA entered into the EOLA Note with the Defendant and made the EOLA Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EOLA with a security interest in any collateral and eventually only paid $12,750 to EOLA despite receiving $450,000 from EOLA.

124.    Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 18, 2023 and January 1, 2024, and at all relevant times between entry into the EOLA

Note and the EOLA Transfer to the Defendant, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small.

125.    On information and belief, between December 18, 2023 and January 1, 2024, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to the Defendant, EOLA intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

126.    Based on the financial records identified above and reviewed by Lighthouse, between December 18, 2023 and January 1, 2024, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to the Defendant, EOLA was insolvent or became insolvent as a result of the EOLA Note and the EOLA Transfer.

127.    The Defendant was the initial transferee of the EOLA Note and the EOLA Transfer.

128.    Based on the foregoing, the EOLA Note and the EOLA Transfer, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

129.    Pursuant to 11 U.S.C. § 550(a), EOLA may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XIII
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
(EOLA v. Defendant)**

130.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

131. EOLA entered into the EOLA Note with the Defendant and made the EOLA Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EOLA with a security interest in any collateral and eventually only paid $12,750 to EOLA despite receiving $450,000 from EOLA.

132. Before, during, and after the period of December 18, 2023 to January 1, 2024, EOLA had creditors, including various individual investors.

133. Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 18, 2023 and January 1, 2024, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to the Defendant, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small in relation to the business or transaction or EOLA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

134. The Defendant was the first transferee of the EOLA Note and the EOLA Transfer.

135. Based on the foregoing, the EOLA Note and the EOLA Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

136. Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EOLA may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XIV
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EOLA v. Defendant)

137.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

138.     EOLA entered into the EOLA Note with the Defendant and made the EOLA Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EOLA with a security interest in any collateral and eventually only paid $12,750 to EOLA despite receiving $450,000 from EOLA.

139.     Before and during the period of December 18, 2023 to January 1, 2024, EOLA had creditors, including various individual investors.

140.     Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 18, 2023 and January 1, 2024, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to the Defendant, EOLA was insolvent or became insolvent thereafter.

141.     The Defendant was the first transferee of the EOLA Note and the EOLA Transfer.

142.     Based on the foregoing, the EOLA Note and the EOLA Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

143.     Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EOLA may recover such fraudulent transfers or obligations from the

Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully request that the Court grant the following relief:

A.      Enter judgment in favor of the Plaintiffs on their claims against the Defendant;

B.      Award the Plaintiffs their attorney's fees and costs for pursuing this action as allowed by applicable law and the above-described notes;

C.      Grant such other relief that the Court deems just and equitable.

Dated:  December 13, 2024              /e/ Steven R. Kinsella
                                       Michael S. Raum (#05676)
                                       **FREDRIKSON & BYRON, P.A.**
                                       51 Broadway, Suite 400
                                       Fargo, ND  58102-4991
                                       701.237.8200
                                       mraum@fredlaw.com

                                       Steven R. Kinsella (#09514)
                                       Katherine A. Nixon (*pro hac vice*, MN #0402772)
                                       **FREDRIKSON & BYRON, P.A.**
                                       60 South 6th Street, Suite 1500
                                       Minneapolis, MN  55402-4400
                                       612.492.7000
                                       skinsella@fredlaw.com
                                       knixon@fredlaw.com

                                       **ATTORNEYS FOR PLAINTIFFS**

## <u>AFFIDAVIT</u>

I, Patrick Finn, am a Partner of Lighthouse Management Group, Inc., the Chief

Restructuring Officer for EPIC Companies Midwest 2023, LLC and EOLA Capital, LLC and I

declare under penalty of perjury that the facts set forth in the preceding Complaint are true and

correct, according to the best of my knowledge, information, and belief.

Dated:  December 9, 2024

Patrick Finn
Partner, Lighthouse Management Group, Inc.
Chief Restructuring Officer for the Plaintiffs